## DANCIGER v. ISAACS.

No. 10084—Opinion Filed April 19, 1921.

Rehearing Denied July 19, 1921.

(Syllabus.)

**1. Conversion—Right of Action—Demand.**

In an action for damages for wrongful conversion, demand is not a necessary prerequisite to the commencement of the action, where the act of conversion has been consummated and demand would be a useless act.

**2. Pleading—Petition—Sufficiency on Demurrer.**

On a demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer.

**3. Trial—Demurrer to Evidence.**

When a demurrer is interposed to the evidence of plaintiff and there is competent evidence reasonably tending to support the allegations of the petition, it is not error to overrule such demurrer.

**4. Trial—Direction of Verdict—Decision on Motion.**

The question presented to a trial court in the motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith.

**5. Appeal and Error—Review—Instructions—Prejudicial Error.**

Requested instructions of the defendant which were refused by the trial court, examined, and held, that in each instance the instructions either failed to state the question of law involved correctly, or that the same was properly submitted to the jury by the trial court, and that therefore the refusal

of the court to give such requested instructions was not prejudicial error.

**6. Conversion—Instructions.**

Instructions, considered as a whole, held to correctly state the law and fairly submit the issues to the jury, arising upon the proof.

**7. Appeal and Error—Discretionary Rulings—New Trial.**

A motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and where the record does not show an abuse of such discretion, the court's action on such motion will not be disturbed by the Supreme Court.

**8. Appeal and Error—Review—Verdict—Sufficiency of Evidence.**

In a civil action triable to the jury where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by Moe A. Isaacs against Dan Danciger for conversion. Judgment for plaintiff, and defendant brings error. Affirmed.

Poe & Lundy, for plaintiff in error.

Davidson & Williams, for defendant in error.

JOHNSON, J. This is an appeal by Dan Danciger, plaintiff in error, defendant below, who, for convenience, will be referred to as the defendant, from a judgment obtained against him upon a verdict of the jury in favor of Moe A. Isaacs, defendant in error, who, for convenience, will hereafter be referred to as the plaintiff.

The suit was an action for the conversion of an undivided one-third interest in the following property: 420 shares of stock of the Oklahoma Star Oil Company, notes aggregating $350, and $400 in cash. A demurrer to the petition was overruled; the defendant then answered, to which plaintiff replied, and the case was tried before a jury, which returned a verdict in favor of the plaintiff and fixed the amount of his recovery at $1,335, and interest at 6 per cent.

The petition filed by the plaintiff, omitting the formal parts, is as follows:

"And for cause of action against the defendant, plaintiff alleges and shows that on or about the — day of August, 1916, plaintiff was in need of a loan of fifteen thousand dollars and at said time plaintiff was holder of two thousand nine hundred and sixty-five shares of the capital stock of the Oklahoma Star Oil Company, par value, twenty-nine thousand six hundred and fifty dollars, and twelve thousand four hundred and ninety-nine shares of capital stock of

the Nemo Oil Company of the par value of twelve thousand four hundred and ninety-nine dollars. That said defendant, Dan Danciger, and one I. J. Ringolsky, agreed with plaintiff to secure for him a loan of fifteen thousand dollars from one George E. Ricker and as security for said loan plaintiff was to transfer and deposit to the said George E. Ricker all of said above mentioned shares of stock as security, and it was further agreed that this plaintiff was to execute his promissory note payable to the said George E. Ricker in the amount of said loan, and that the said I. J. Ringolsky and Dan Danciger were to become indorsers, and as consideration to the said Dan Danciger and I. J. Ringolsky for procuring said loan and endorsing same, it was agreed that plaintiff was to sell sufficient of the Oklahoma Star Oil Company stock to retire said indebtedness, and after said indebtedness was fully paid by said plaintiff, that all of the remaining shares of the stock of the Oklahoma Star Oil Company, together with any and all profits arising from the sale of the same, should be equally divided between the three parties, all of which aforesaid agreement was in parol; that in pursuance of said agreement said loan of fifteen thousand dollars was procured from the said George E. Ricker, all of the said above mentioned shares of stock was deposited with him as security and the note in evidence of said indebtedness was duly executed by this plaintiff and indorsed by the said Dan Danciger and I. J. Ringolsky, and that immediately after the procuring of said loan this plaintiff begun the work of endeavoring to sell Oklahoma Star Oil Company stock and continued at such work in Kansas City, Missouri, for a period of forty days, paying all of his own expenses, aggregating the sum of five hundred dollars, and during such period sold enough of said stock to pay on said note the sum of seven thousand five hundred dollars. This plaintiff, realizing that he could not sell more of said stock, procured a loan and paid off the balance of said loan and took down from George E. Ricker all of the remaining stock formerly pledged with him.

"Plaintiff further shows that there were four hundred and twenty shares of the Oklahoma Star Oil Company stock remaining in the hands of the said George E. Ricker and taken down by this plaintiff when said loan was fully paid and also notes aggregating three hundred and fifty dollars taken in payment of the stock of Oklahoma Star Oil Company sold by plaintiff, and four hundred dollars in cash realized from the sale of such stock. That by the terms of the agreement between the parties each of them was the owner of a one-third interest in the said four hundred and twenty shares of stock, three hundred and fifty dollars of notes and the four hundred dollars in cash, and that in pursuance of such agreement, plaintiff delivered said property to the said I. J. Ringolsky for division, and the said I. J. Ringolsky took one-third of the amount and the said defendant, Dan Danciger, wrongfully and without right took all of the balance of said property and converted same to his own use and has refused to deliver the one-third belonging to the plaintiff, to him.

"Plaintiff further shows that at the time of such conversion on the part of said defendant, that one-third of said four hundred and twenty shares of stock were of the value of fourteen hundred dollars, and that the value of one-third of such notes was one hundred and sixteen dollars, and that one-third of the four hundred dollars in cash is one hundred and thirty-three dollars.

"Wherefore, plaintiff prays judgment against defendant, Dan Danciger, in the sum of one thousand six hundred and forty-nine dollars, for costs of this suit, and for such other and further relief as may be equitable and just."

The defendant demurred to the petition, which demurrer was overruled, and the defendant answered by general denial, and pleaded as a defense, settlement between the parties, in which allegation the defendant alleged that a full and complete settlement was made with the plaintiff, and that he accepted such settlement in full satisfaction of all his rights under and by virtue of the transaction and contract alleged, to which answer the plaintiff filed a reply consisting of a general denial, and upon the issues thus joined the case was submitted to the jury, and the trial resulted as hereinbefore stated.

The defendant makes numerous specifications of error, which were summarized and argued in the brief of counsel as follows:

"It is the contention of the defendant (plaintiff in error) that no judgment could properly be rendered against him under the pleadings or the evidence, and that the verdict and judgment are clearly contrary to law. This contention will cover the errors assigned in (1) overruling the demurrer to the petition; (2) overruling the demurrer to the evidence of the plaintiff; (3) refusal to request a verdict for the defendant, and (4) the refusal to give instruction No. 1, requested by the defendant. These errors will be grouped together and discussed under the one proposition. It is also the contention of the defendant that the court erred in refusing to give instruction No. 2; that it erred in giving instructions Nos. 5, 8, 9, and 10. Each of these instructions will be considered separately. The defendant also contends that the court erred in refusing to grant his motion for a new trial, not only on the grounds above set forth, but on the grounds of newly discovered evidence, and this matter will be considered separately."

The defendant's first specification of error, that the court erred in overruling the

defendant's demurrer to the petition, is without merit, as it is obvious from the plaintiff's petition that the same stated a cause of action in conversion against the defendant.

The defendant urges in support of this assignment that the petition fails to allege that any demand was made before suit for the return of the property alleged to have been converted. This allegation is found in the petition:

"Plaintiff further shows * * * plaintiff delivered said property to the said I. J. Ringolsky for division, and the said I. J. Ringolsky took one-third of the amount, and the said defendant, Dan Danciger, wrongfully and without right took all of the balance of said property, and converted it to his own use, and has refused to deliver the one-third belonging to the plaintiff, to him."

In the case of Allen v. Smith, 70 Oklahoma. 174 Pac. 280, this court said:

"In an action for damages for wrongful conversion, demand is not a necessary prerequisite to the commencement of the action, where the act of conversion has been consummated and demand would be a useless act."

Specifications 2, 3, and 4 will be considered together, as they go to the question of the sufficiency of the evidence to take the cause to the jury.

The evidence of the plaintiff consisted of his own testimony, which substantially supported all the allegations of the plaintiff's petition, and was, in substance, that one I. J. Ringolsky and the defendant, who were particular friends of the plaintiff, and had been for 25 or 30 years, and with whom he had been associated from time to time in business transactions. agreed with plaintiff to secure for him a loan of $15,000 from George E. Ricker, and as security for said loan plaintiff was to transfer and deposit to the said George E. Ricker the shares of stock, and it was further agreed that plaintiff was to execute his note in said sum, and that the said I. J. Ringolsky and the defendant were to become indorsers, and as a consideration to them for procuring said loan and indorsing same it was agreed that the plaintiff was to sell enough of the Oklahoma Star Oil Company stock to retire said indebtedness, and after said indebtedness was fully paid, that all the remaining shares of stock of the Oklahoma Star Oil Company, together with any and all profits arising from the sale of the same should be equally divided between the three parties, and that in pursuance of said agreement such stock was so deposited and the said note executed as per agreement,

and that the plaintiff immediately began selling stock and succeeded in selling enough of the same to pay his expenses and to pay on said note the sum of $7,500 during a period of about 40 days, at the end of which time the plaintiff realized that he could not sell more of said stock, and that he proceeded to pay off the balance of said note, and took down all of the remaining stock pledged to secure the same, and that there was remaining 420 shares of the Star Oil Company stock at the par value of $10, and there remained in the bank to the credit of the three parties which had been deposited by agreement of the parties to the credit of what they denominated the Danciger Syndicate (all checks against the account were to be drawn by Dan Danciger), also $350 in notes given for stock, and that these amounts under the agreement were to be divided equally between the three parties named, and that the parties met in the office of the said I. J. Ringolsky for the purpose of settling and that the plaintiff laid said shares of stock and notes upon the desk of the said Ringolsky with directions to him to take out what was coming to him and Danciger; that the said Ringolsky took out his part, passing the same over to Danciger, who then and there kept all of said shares of stock and notes and money in the bank, and refused the plaintiff any part thereof, and has ever since refused to pay any part thereof.

This, in substance, was the testimony of the plaintiff, which was on every material point, as pertained to the settlement. contradicted by the testimony of both Ringolsky and the defendant; their contentions being, and they so testified, that at the time of the settlement a very bitter controversy arose between the plaintiff and defendant over the terms of the settlement, in that the note in question had not matured and had some time to run, and that under the agreement it was the duty of the plaintiff and the defendant and Ringolsky, and that each of them had the right, if they so desired, to continue to sell all the stock at such profits as they were able to realize, and that each of them would participate in the distribution of the same, share and share alike. However, Ringolsky testified that he, then and there, waived any claim that he might have in any future profits, and insisted that Danciger was entitled to have his as contended for, and proposed that the plaintiff settle with Danciger upon that basis, and that if the plaintiff did not have the money to pay Danciger his part, the plaintiff make Danciger his note to cover the same, and that he, Ringolsky, would indorse the note, and both the defendant and Ringolsky testified that a

final settlement was reached by the plaintiff agreeing 'that Danciger was to retain all' of the stock and notes and money in settlement of his claims for future profits. Such, in substance, was the situation and the evidence at the close of the trial; the testimony of the plaintiff fully and substantially sustained all of the allegations of his petition, being contradicted by the testimony of the defendant and Ringolsky, as hereinbefore set out.

In these circumstances, it is clear to us that the defendant's specification of error No. 2, that the court erred in overruling the defendant's demurrer to the evidence; and No. 3, refusal to instruct a verdict for the defendant; and No. 4, the refusal to give requested instruction No. 1, of the defendant, which was a peremptory instruction for a verdict for the defendant—each and all were without merit, for the reason, frequently announced by this court. that:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all the facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled."

Applying this rule as we must in all similar cases. it is clear that the court did not err in overruling the defendant's demurrer to the evidence, and his requested peremptory instruction for a verdict in his favor.

The next contention of the defendant is that the court erred in refusing to give requested instruction No. 2, and in giving the instructions Nos. 5, 8, 9, and 10. There is no merit in these contentions. We have examined the requested instruction refused, and find that the question there presented was fully covered by the 11th paragraph of the court's instructions to the jury, and likewise that the instructions complained of contained a fair statement of the law, and that there was no error committed in giving the same, and that the case comes within the rule frequently announced by this court that:

In a civil action triable to a jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on

law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal."Lusk v. Bandy, 76 Okla. 108, 184 Pac. 144; National Lbr. Co. v. Elred, 77 Okla. 38, 186 Pac. 470; First National Bank of Cushing v. Atchison, T. & S. F. R. Co., 77 Okla. 93, 186 Pac. 1086; Terrell Co. v. Davis, 77 Okla. 302, 188 Pac. 676; Shawver v. Williamson-Halsell-Frazier Co., 78 Okla. 198, 189 Pac. 186; Alamo National Bank v. Dawson Produce Co., 78 Okla. 235, 190 Pac. 393.

The last contention made by the defendant is that the court erred in overruling the defendant's motion for a new trial on the grounds of newly discovered evidence. We do not think that there is any merit in this contention, as the newly discovered evidence was clearly of an impeaching character, and the motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and where the record does not show an abuse of such discretion, the court's action on said motion will not be disturbed by the Supreme Court. In re Klufa's Estate, 78 Okla. 13, 188 Pac. 329. We think the motion is clearly within the rule announced by the court in the case cited, supra.

From an examination of the entire record, it clearly appears that in the instant case there is competent evidence reasonably tending to support the verdict and no reversible error is apparent by reason of the action of the trial court in his ruling on admitting and rejecting evidence, and in the instructions requested, and those given by the court, and in these circumstances this court is without authority to disturb the judgment. The judgment is therefore affirmed.

PITCHFORD, V. C. J., and MILLER, ELTING, and KENNAMER, JJ., concur.